**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ANGELA D. PERRY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 13-CV-2252-P** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

On September 4, 2014, the assigned Magistrate Judge recommended that the Court deny the Motion for Summary Judgment (doc. 11) filed by Plaintiff and affirm the Commissioner's decision to deny Disability Insurance Benefits. (*See* Findings, Conclusions, and Recommendation ("FCR"), doc. 14.) Plaintiff timely objected to the recommendation. (*See* Pl.'s Obj'ns to FCR [hereinafter "Obj'ns"], doc. 15.) She objects to findings that the Administrative Law Judge ("ALJ") properly considered the medical opinions of her treating physician and properly evaluated her credibility. (*Id.* at 1-11.) She urges the Court to reverse the decision of the Commissioner and remand her case for further proceedings. (*Id.* at 11.) The Commissioner has not responded to the objections.

After reviewing all relevant matters of record, including the FCR and the filed objections, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), and for the reasons that follow, the Court sustains the objection to the finding that the ALJ properly considered the medical opinions of her treating physician. Accordingly, it **GRANTS** Plaintiff's motion and **REVERSES** the decision to deny Disability Insurance Benefits.

## I.    AUTHORITY OF MAGISTRATE JUDGE AND STANDARD OF REVIEW

Section 636(b)(1)(B) of Title 28 of the United States Code grants magistrate judges authority

to issue findings and recommendations regarding dispositive motions in cases referred to them.  The

statute provides for the filing of written objections to proposed findings and recommendations and

for a de novo determination of matters "to which objection is made."  Objections asserted in accord-

ance with this provision serve "to narrow the dispute" and enable district judges "to focus attention

on those issues – factual and legal – that are at the heart of the parties' dispute."  *Thomas v. Arn*, 474

U.S. 140, 147 & n.6 (1985).

Rule 72(b)(3) of the Federal Rules of Civil Procedure likewise provides for a de novo deter-

mination of "any part of the magistrate judge's disposition that has been properly objected to."  Rule

72(b)(2) requires the objecting party to file "specific written objections" and grants other parties

fourteen days to respond to such objections.

Consistent with § 636(b)(1) and Rule 72(b)(3), the Court reviews the findings and recom-

mendation of the Magistrate Judge in this case.  It "may accept, reject, or modify the recommended

disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1).

## II.    BACKGROUND

The Magistrate Judge set out the procedural and factual history, including medical evidence

and the decision of the ALJ that became the final decision of the Commissioner.  The Court will not

restate the entirety of that background here.  But the following summary places the issues and

objections in the proper context.

Plaintiff alleges that she became disabled on April 22, 2010.  (Tr. at 173.)  The ALJ found

that she retained the residual functional capacity ("RFC") to perform light work.  (Tr. at 19.)  More specifically, he found that she had the RFC to (1) lift or carry twenty pounds occasionally and ten pounds frequently; (2) stand or walk for two hours; (3) sit for six hours; and (4) bend occasionally. (*Id.*)  Although she had no limitations on her ability to push or pull, the ALJ found that she "should avoid even moderate exposure to hazards, such as unprotected heights or dangerous machinery." (*Id.*)  He found that she was unable to perform her prior work because she is unable to perform the full range of light or medium exertional levels required for them.  (Tr. at 29.)

At Step 5 of the sequential inquiry used to determine whether a claimant is disabled,[1] and based on the testimony of the vocational expert ("VE"), the ALJ found Plaintiff able to perform identified jobs (order control clerk, inventory clerk, and food checker), which exist in significant numbers in the national and regional economies.  (Tr. at 30-31.)  In doing so, the ALJ accorded greater weight to opinions of State agency physicians than to medical opinions of Plaintiff's treating physician, Joseph McClaran, M.D.  (Tr. at 25.)  The ALJ also found Plaintiff only partially credible. (Tr. at 26.)  Notably, the VE testified that an individual who was limited to occasional handling and negligible reaching could not perform the identified jobs because they require frequent reaching, handling, and fingering.  (Tr. at 81.)  The VE also testified that the identified jobs require that the individual be able to sit or stand for six hours.  (*Id.*)

## III.   OBJECTIONS

The Magistrate Judge found that the ALJ properly considered the opinions of Dr. McClaran and properly determined that Plaintiff was not fully credible and thus recommended that the Court

---

[1]Step 5 involves determining whether "the claimant can perform other substantial work in the national economy."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  And the Commissioner has the burden at Step 5 of the sequential analysis.  *Id.*

uphold the ALJ's decision.  (FCR at 18-26.)  Plaintiff objects to both findings.  (Obj'ns at 1.)  After

conducting a de novo review of these issues as required by 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(3), the Court finds that the ALJ improperly considered the opinions of the treating physi-

cian, sustains the objection on that issue, reverses the decision of the Commissioner, and  remands

the case for further consideration.

## A.  <u>Evaluating Opinions of Treating Physician</u>

Plaintiff argues that the ALJ improperly evaluated opinions of her treating physician, Dr.

McClaran.  (Obj'ns at 1-9.)  She asserts the following errors of the Magistrate Judge:

(1) finding that the ALJ could reject the opinions on grounds that the doctor gave
inconsistent assessments as to how long she could sit, i.e., no more than 3 hours or
at least 5.5 hours;

(2) finding that the ALJ could reject the opinions as inconsistent with an examining
physician, Roberto Nieto, M.D., who opined that she could constantly sit, stand, and
reach at desk level;

(3) stating that the opinions were inconsistent with two "other" examining physicians
before referring to opinions from Drs. McClaran and Nieto;

(4) finding that the opinions were inconsistent with records of Winfred Sardar, M.D.;

(5) concluding that ALJ was not required to weigh the opinions under the factors set
out in 20 C.F.R. § 404.1527(c)(2)-(6) because the opinions contradicted first hand
competing evidence.

The Court easily resolves suggested Error 3.  Although Plaintiff quarrels with the Magistrate

Judge's statement regarding "two other examining physicians," it is apparent from the FCR and the

record as a whole that the two "other" physicians are Drs. Nieto and Sardar. The Magistrate Judge

merely mentioned Drs. Nieto and McClaran immediately following the statement so as to compare

physical assessments completed by those physicians on September 2, 2010.  In the next paragraph,

4

the Magistrate Judge discussed inconsistencies with findings of Dr. Sardar.  The Court finds no error in the Magistrate Judge's statement regarding two "other" physicians.  Before addressing the other four suggested errors, the Court briefly discusses relevant opinions and medical records of the relevant treating or examining physicians.

### 1.    Dr. McClaran

Dr. McClaran has treated Plaintiff since at least January 2009.  (*See* Tr. at 323 (showing that he first treated Plaintiff's impairment on January 20, 2009), 399 (same), 766 (same).)  On four occasions, he completed a two-page, pre-printed form ("Physical Ability Assessment") in which he assessed the functional impairment of Plaintiff.  (*See* Tr. at 361-62 (based upon a July 12, 2010 physical examination); 384-85 (dated June 16, 2010);[2] 397-98 (based upon a May 12, 2010 examination); 709-10 (based upon a March 23, 2011 examination).)  On three of those occasions, he also completed a separate one-page, pre-printed "Medical Request Form."  (*See* Tr. at 360 (dated September 2, 2010), 399 (dated May 13, 2010), 708 (dated March 23, 2011).)  With respect to the June 2010 assessment, Dr. McClaran simply attached the same May 13, 2010 request form that he had completed following his May 12, 2010 examination of Plaintiff.  (*Compare* Tr. at 387 *with* Tr. at 399.)  In addition, on two other occasions, Dr. McClaran completed an eight-page, pre-printed "Multiple Impairment Questionnaire" ("MIQ").  (*See* Tr. at 323-30 (dated September 17, 2010), 766-73 (dated January 5, 2012).)

Each pre-printed assessment form provides a section for physicians to identify the source of information used to assess their patient's physical abilities, i.e., patient's report; physician's observation, examination, or functional assessment of patient; a formal functional capacity evaluation of

---

[2]The record notes that the assessment was based on a "12/24/08" physical examination.  (Tr. at 384.)

patient; or a diagnosis requiring work activity restrictions.  (*See*, *e.g.*, Tr. at 361.)  Each form next provides space to identify: "Date of last physical examination on which your assessment of your patient's physical abilities is based."  (*See*, *e.g.*, *id.*)  Each form then provides a table for stating medical opinions as to the patient's ability to tolerate listed activities for specified durations.  (*See*, *e.g.*, Tr. at 361-62.)  The durations are divided into three categories: (1) constantly, i.e., more than 5.5 hours per 8-hour work day; (2) frequently, i.e., between 2.5 and 5.5 hours per work day; and (3) occasionally, i.e., 0 to 2.5 hours per work day.  (*See*, *e.g.*, *id.*)  Each table also provides space to indicate whether the opinions are "supported by clinical findings" or inapplicable to the diagnosis.  (*See*, *e.g.*, *id.*)  Lastly, each form provides space for physicians sign and date the form and to elaborate on any activity, "including environmental conditions or the work environment."  (*See*, *e.g.*, Tr. at 362.)

The pre-printed medical request forms provide space for stating (1) the patient's primary diagnosis, (2) additional factors that impact return to work, (3) specific restrictions placed on the patient, and (4) whether the patient could return to work with accommodations for the restrictions.  (*See*, *e.g.*, Tr. at 360.)  And, if the patient cannot return to work with accommodations, the physician is to explain that inability and estimate when the patient can return to work with and without accommodation.   (*See*, *e.g.*, *id.*)

The pre-printed questionnaires provide physicians with an opportunity to provide detailed and specific answers to twenty-nine questions concerning the patient's impairments.  (*See* Tr. at 323-30, 766-73.)  The questions seek (1) basic information, i.e., dates and frequency of treatment, diagnosis, prognosis, and presence of pain; (2) more involved information such as supporting clinical findings and test results, explaining significant limitations in repetitive reaching, handling, fingering,

or lifting; (3) estimates regarding the level of pain and fatigue experienced, capacity for sitting, standing/walking, lifting, and carrying; (4) degree of limitation in grasping, fine manipulations, and reaching; and (5) other information related to the patient's ability to work in a competitive work environment.  (*See id.*)

In each of his completed medical request forms, Dr. McClaran identified Plaintiff's primary diagnosis as arnold chiari malformation with the following additional factors that impact her return to work: (1) status post surgical decompression of hydrocephalus with intractable occipital neuralgia and (2) chronic and severe headaches, nausea, vomiting, neck stiffness, and pain requiring sedating pain medications.  (*See* Tr. at 360, 399, 708.)  Dr. McClaran consistently restricted Plaintiff in the following activities:  "No lifting or reaching overhead, prolonged standing, carrying heavy objects, pulling, pushing, [and] cannot use power equipment."  (*See id.*)  And he opined that, even with accommodations, she would be unable to return to work due to these restrictions.  (*Id.*)  In his view, she would never be able to return to work because "she has permanent functional limitation and additionally must take sedating medications which could endanger herself or coworker."  (*Id.*)  In the March 2011 request form, he also stated that Plaintiff "no longer works" and is "permanently disabled."  (Tr. at 708.)

In his May and September 2010 assessments, Dr. McClaran opined that Plaintiff could (1) constantly sit and lift and carry up to ten pounds; (2) frequently stand, use both hands to finely manipulate and grasp objects, lift and carry between eleven and twenty pound, and use lower extremities for foot controls; and (3) occasionally walk, reach at all levels, push or pull up to twenty pounds, climb, balance, stoop, kneel, crouch, and crawl.  (*See* Tr. 361-62, 397-98.)  And Plaintiff was completely unable to lift or carry more than twenty pounds.  (*See id.*)  Although all of the

opinions set out in the May and September 2010 assessment forms applied to Plaintiff's diagnosis, none of them were supported by clinical findings.  (*See id.*)

According to Dr. McClaran's March 2011 assessment, Plaintiff had a reduced ability to perform some activities.  (*See* Tr. at 709-10.)  Her ability to stand was then limited to occasionally and Dr. McClaran noted that, although Plaintiff could frequently use both hands to finely manipulate and grasp objects, she would drop objects.  (*See* Tr. at 709.)  And while her ability to carry weight remained unchanged, she could lift up to ten pounds only frequently (not constantly) and her ability to lift eleven to twenty pounds was limited to less than five minutes.  (*See* Tr. at 710.)  Plaintiff's condition, furthermore, entirely precluded crawling and climbing ladders.  (*Id.*)

Dr. McClaran's June 2010 assessment paints a much starker picture of Plaintiff's condition. In June 2010, Plaintiff could not hold her head up due to pain, she could not look down, she dropped objects, and had decreased strength in her grip.  (*See* Tr. at 384.)  Her ability to tolerate all work activities other than seeing and hearing was limited to occasionally and any lifting or carrying was limited to ten pounds or less.  (Tr. at 384-85.)

Dr. McClaran also completed two MIQs.  (*See* Tr. at 323-30 (dated September 17, 2010), 766-73 (dated January 5, 2012).)  Except for the answers to Questions 13, 28, and 29, the MIQs are materially identical.[3]  In both MIQs, Dr. McClaran identified the same diagnosis (arnold chiari malformation), prognosis ("Chronic severe occipital neuralgia with nausea +/- vomiting; neck stiffness and pain which will require sedating meds. Poor upper extremity strength and decreased fine motor

---

[3]As noted by the ALJ, (*see* Tr. at 24 n.1), the handwriting on the two forms differ.  But there is no discernable differences between the signatures.  And the signatures appear consistent with other medical records signed by Dr. McClaran.  The Court has no reason to disregard either MIQ due to the different handwriting.  The answers to Question 13 differ because of the passing of time between the two MIQs – the latter MIQ changes "past 6 wks" to "past year" when explaining how long Plaintiff had experienced an increased incidence of dropping dishes and having difficulties writing.  The Court will discuss the differences in the answers to Questions 28 and 29 in the body of this Order.

capabilities"); clinical findings (tenderness, spasms, and decreased fine motor skills); test results; nature, location, frequency (consistent), and precipitating factors of pain; pain rating (9 on a 10-point scale); fatigue rating (8 on a 10-point scale); and inability to completely relieve pain with medication without unacceptable side effects.  (*See* Tr. at 323-25, 766-68.)

Dr. McClaran made identical estimates for Plaintiff's residual functional capacity: (1) sit for no more than three hours; (2) stand/walk for no more than two hours; (3) must get up and move around "several times an hour" for at least five minutes; (4) must not stand or walk continuously in a work setting; (5) lift or carry up to ten pounds frequently, up to twenty pounds occasionally, and more than twenty pounds never; (6) moderately limited in grasping, turning, and twisting objects with both hands; (7) moderately limited in using either hand for fine manipulations; and (8) markedly limited in using either arm for reaching, including overhead.[4]  (*See* Tr. at 325-27, 768-70.)

In addition, the doctor consistently stated that Plaintiff needs a job that permits ready access to a restroom, her symptoms would likely increase in a competitive work environment, she would likely be absent from work "[m]ore than three times a month" due to her impairments, and that she is unable to look at a computer screen or down at a desk in a competitive work environment because her condition interferes with the ability to keep her neck in a constant position.  (*See* Tr. at 327-29, 770-72.)  In Dr. McClaran's opinion, Plaintiff can tolerate only low work stress because her constant pain leads to increased muscle tension and worsening pain which is exacerbated by external stressors.  (*See* Tr. at 328, 771.)  And her pain, fatigue, or other symptoms would constantly be severe enough to interfere with her attention and concentration.  (*See id.*)  Several times per hour, Plaintiff

---

[4]The form defines "Moderate" as "Significantly limited but not completely precluded" and "Marked" as "Essentially Precluded."  (Tr. at 326, 769.)

9

would need to take unscheduled and unpredictable breaks to rest for an average of ten to twenty minutes.[5]  (*See id.*)  Dr. McClaran expected Plaintiff's impairments to last at least twelve months, opined that emotional factors such as depression and anxiety contribute to the severity of her symptoms and functional limitations, and did not view her as a malingerer,.  (*See id.*)

The primary differences with respect to Dr. McClaran's two MIQs lies within his answers to Questions 28 and 29.  Question 28 provides a number of possible limitations that could affect the patient's ability to work at a regular job on a sustained basis.  (*See* Tr. at 329, 772.)  And it asks the physician to check all limitations that apply.  (*See id.*)  In September 2010, Dr. McClaran placed a "+/-" next to "psychological limitations," checked "need to avoid heights," and indicated that Plaintiff could not push, pull, kneel, bend, or stoop.  (Tr. at 329.)  In January 2012, the doctor's answer was the same except that he left blank the areas concerning pushing, pulling, kneeling, bending, and stooping.  (*See* Tr. at 772.)  The 2012 MIQ is also blank with respect to Question 29, which provides the physician an opportunity to set "the earliest date that the description of symptoms and limitations in this questionnaire applies" and to provide additional comments.  (*See id.*)  In the 2010 MIQ, Dr. McClaran identified the earliest date as April 27, 2010, and provided the following additional comment: "Her symptoms have been progressive but by 4/27/10 she rendered incapable of working." (*See* Tr. at 329.)

### 2.    Dr. Nieto

Dr. Nieto examined Plaintiff on August 19, 2010, on a referral from Dr. McClaran.  (*See* Tr. at 315-18.)  On September 2, 2010, Dr. Nieto completed the pre-printed assessment and medical

---

[5]The 2012 MIQ may state "10-70 minutes" instead of "10-20 minutes" but given the identical nature of the remainder of the answer, "20" appears to be more accurate.

request forms.  (*See* Tr. at 316-17.)  He identified Plaintiff's primary diagnosis as "chronic daily headache, chronic neck pain, [history] of arnold chiari malformation, decompression surgery in 2005" and identified the following additional factors that impact her return to work: "significant spasms, pain, and [decreased range of motion] of the neck which are exacerbating her headaches." (Tr. at 315.)  He placed the following restrictions on Plaintiff: no lifting more than ten pounds and no stooping, reaching, pushing, pulling, or balancing.  (*Id.*)  And, like Dr. McClaran, he opined that, even with accommodations, she would be unable to return to work due to these restrictions.  (*Id.*) But he provided no explanation for that opinion.  (*Id.*)  In addition, he simply stated "never" as to when Plaintiff could return to work.  (*Id.*)

Dr. Nieto's assessment differs in many aspects from those of Dr. McClaran.  Dr. Nieto opined that Plaintiff could (1) constantly sit, stand, reach at desk level, use her left hand to finely manipulate and grasp objects,[6] and use her lower extremities for foot controls and (2) occasionally walk, lift and carry up to ten pounds, and climb regular stairs.  (*See* Tr. at 316-17.)  Dr. Nieto made no notation that Plaintiff could tolerate any activity frequently, and for many activities (reaching overhead or below the waist, using her right hand, lifting or carrying more than ten pounds, climbing regular ladders, balancing, stooping, kneeling, crouching, and crawling), he made no notation that Plaintiff could tolerate the activity at all.  (*See id.*)  With respect to pushing and pulling, Dr. Nieto recorded a maximum weight of ten pounds with no notation as to tolerable duration.  (Tr. at 317.) The lack of tolerable duration for these activities reasonably indicates that Plaintiff simply could not engage in the activities at all.  And the assessment form further bolsters that view because  for most

---

[6]With respect to the "Simple Grasp" activity, Dr. Nieto indicates that Plaintiff could constantly AND occasionally tolerate such activity.  (*See* Tr. at 316.)  The Court will not speculate as to what may have caused the doctor to check both boxes.

of those activities (all except using her right hand for fine manipulation and simple grasping), Dr. Nieto also checked a box to indicate that clinical findings support the absence of noting tolerance for any duration.  (*See* Tr. at 316-17.)

### 3.     Dr. Sardar

Plaintiff has undergone pain management at Cornerstone Pain Management or related entities on an ongoing basis since at least April 2007.  (*See* Tr. at 250-312, 581-85, 715-38, 756-63, 777-84.) While Dr. Sardar provided the earlier treatment, a Certified Physician Assistant, Jennifer McBryde, provided treatment commencing in April 2011.  (*See* Tr. at 693-96, 731-34, 756-66, 777-84.) Neither Dr. Sardar nor Ms. McBryde assessed Plaintiff's residual functional capacity or completed any form to set out the functional limitations resulting from her impairments.  They did, however, consistently note that Plaintiff exhibited "5/5 strength in all extremities," (*see* Tr. at 251, 257, 274, 695, 737, 758, 783), which might be inconsistent with Dr. McClaran's opinions that Plaintiff had problems with her motor skills.  And they also noted that psychiatric examination showed normal concentration for Plaintiff, (*see* Tr. at 695, 737, 759), which appears inconsistent with the opinion of Dr. McClaran that Plaintiff's symptoms were severe enough to constantly interfere with her attention and concentration.

### 4.     Alleged Errors of Magistrate Judge

Plaintiff asserts that the Magistrate Judge erred in four respects when she found that the ALJ properly considered the opinions of Plaintiff's treating physician, Dr. McClaran.  Given the inter-relationships between the alleged errors, the Court considers them as they arise within the administrative framework for evaluating the opinions of a claimant's treating physicians.

Under the applicable regulations, the ALJ must consider and weigh the medical opinions[7] of Dr. McClaran.  *See* 20 C.F.R. § 404.1527(b)-(c) (stating that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive").  The regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight."  *Id.* § 404.1527(c)(1)-(6).[8]  When a treating source has given an opinion on the nature and severity of a patient's impairment, such opinion is entitled to controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with" other substantial evidence.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)).  And "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]."  *Id.* at 453.  In addition, under current regulations, the ALJ may re-contact a treating physician or other medical source if there is insufficient evidence to determine whether the claimant

---

[7]As the regulation explains to claimants:  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  The regulation reserves some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulations.  *Id.* § 404.1527(d).

[8]These factors are:  (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention.  20 C.F.R. § 404.1527(c).

is disabled.  *See* 20 C.F.R. § 404.1520b(c)(1);[9] *accord Jones v. Colvin*, No. 4:13-CV-818-A, 2015

WL 631670, at *7 (N.D. Tex. Feb. 13, 2015) (accepting recommendation of Mag. J. which recog-

nized that, effective March 26, 2012, this new regulation replaced the former mandatory requirement

of § 404.1512(e) applied in *Newton*).

When an ALJ finds that opinions of a treating source are not entitled to controlling weight,

he or she must consider the six factors set out in the regulations to properly assess the weight to be

given to the opinions.  *Newton*, 209 F.3d at 456.  For good cause shown, an ALJ may assign little

or no weight to an opinion from a treating source.  *Id.* at 455-56.  "Good cause may permit an ALJ

to discount the weight of a treating physician relative to other experts where the treating physician's

evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic

techniques, or is otherwise unsupported by the evidence."  *Id.* at 456.

The ALJ unquestionably considered the opinions of Dr. McClaran.  (*See* Tr. at 19-20, 22-25,

28-29.)  But the ALJ did not give those opinions controlling weight:

> The opinions of Dr. McClaran and Dr. Nieto regarding the severity of the claimant's
> impairment(s) cannot be given controlling weight or deference over medical evidence
> which is inconsistent with it, such as Exhibits 10F and 15F,[10] because they are not
> reasonably supported by the preponderance of the medical evidence in the record nor
> by medically-acceptable clinical and laboratory diagnostic techniques.  The opinions
> are in conflict with/not well supported by, and/or disproportionate in severity to the
> preponderance of the medical or other evidence of record.  As a treating doctor and
> examining doctor, they have not placed or recommended hospitalization or placement

---

[9]This regulation was in effect when the ALJ issued his decision on May 24, 2012.  Prior to the effective date
of § 404.1520b, the ALJ would have been obliged under the mandatory provision of § 404.1512(e) to "seek clarification
or additional evidence from the treating physician" if the ALJ determined "that the treating physician's records are incon-
clusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal
examination or treatment of the claimant."  *See Newton*, 209 F.3d at 453.

[10]Exhibit 10F is a Physical Residual Functional Capacity Assessment completed by Yvonne Post, D.O., on
April, 2, 2011.  (*See* Tr. at 659-66.)  Exhibit 15F is a Case Assessment Form completed by Kavitha Reddy, M.D., which
affirmed the assessment of April 2, 2011.  (*See* Tr. at 739.)

in a sheltered or highly supported living environment due to the severity of the physi-
cal or mental condition; nor has the claimant had to seek long-term or emergency
treatment for such condition.  They are inconsistent with the objective medical evi-
dence, or the preponderance of the medical or other evidence of record, or they are
not supported by the substantial medical or other evidence of record.  The physicians
used forms or form-type reports without the stated bases for conclusion/opinions.  Dr.
McClaran and Dr. Nieto opined on issues/decisions reserved to the Commissioner.
There are insufficient legible physician notes; the doctors' submissions do not allow
me to determine the nature and severity of the claimant's impairments, determine the
claimant's residual functional capacity, or whether she meets the durational require-
ments of the regulations, as consistent with 20 CFR 404.1513(E).

(Tr. at 25 (footnote added).)

Duplicating much of what he stated in the above paragraph, the ALJ later identified five list-

ed reasons for not giving Dr. McClaran's opinions controlling weight:  (1) the "opinions/conclusions

do not meet the consistency and well-supported requirements of SSR 96-2p., nor are they consistent

with the preponderance of the objective medical and other evidence of record;" (2) Dr. McClaran

did not recommend hospitalization or placement in a sheltered living environment; (3) internally

inconsistent opinions; (4) inadequately explained opinions; and (5) the opinions were on issues of

disability that are reserved for the Commissioner.  (Tr. at 28-29.)  He accorded the opinions of Dr.

McClaran "only the weight merited by the overall evidence from him, in conjunction with the total

evidence in the case and other relevant factors." (Tr. at 29.)  After giving "due weight and consider-

ation . . . to the analyses by the State Agency's highly qualified medical and other personnel," the

ALJ gave greater weight to their opinions "regarding the severity of the claimant's physical and

mental impairments and residual functional capacity."  (*Id.*)

The Magistrate Judge recognized that the ALJ did not provide a detailed analysis of the six

required factors, but found such analysis not required because the ALJ had competing first-hand

evidence that contradicted the opinions of Dr. McClaran.  (*See* FCR at 22.)  The Magistrate Judge

did not specify the specific first-hand evidence, but had earlier noted inconsistencies between Dr.

McClaran's own opinions and inconsistencies between his opinions on those of Drs. Nieto and

Sardar. (*See id.* at 20-21.) *Newton* indeed eliminates the requirement to provide a detailed analysis

when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one

doctor's opinion is more well-founded than another." 209 F.3d at 458. Similarly, a detailed analysis

is unnecessary when the ALJ has weighed the treating physician's opinion against other treating or

examining physicians who "have specific medical bases for a contrary opinion." *Id.*

Nothing indicates that the ALJ weighed the opinions of Dr. McClaran against opinions of

any other treating or examining physician. The ALJ instead found opinions from Yvonne Post, D.O.,

and Kavitha Reddy, M.D. more well-founded. (*See* Tr. at 29.) The ALJ had earlier found opinions

of Dr. McClaran inconsistent with a Physical Residual Functional Capacity Assessment (Ex. 10F)

completed by Dr. Post on April, 2, 2011, and a Case Assessment Form (Ex. 15F) completed by Dr.

Reddy. (*See* Tr. at 25.) But because these doctors are non-examining physicians, (*see* Tr. at 659

(indicating that Dr. Post was to review file) and 739 (indicating that Dr. Reddy had reviewed all

evidence in the file);[11] their opinions provide no basis to bypass the requisite detailed analysis. *See*

*Newton*, 209 F.3d at 456-58, 460; *Meyers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).

Although the Magistrate Judge notes inconsistencies between Dr. McClaran's own opinions,

such inconsistencies within the records of the same treating physician "do not fall within the

competing first-hand medical evidence exception" recognized in *Newton*. *See Howeth v. Colvin*, No.

12-CV-0979-P, 2014 WL 696471, at *8 (N.D. Tex. Feb. 24, 2014). As recognized in *Howeth*:

---

[11]The regulations also recognize that RFC assessments by State agency physicians are considered as statements about what the claimant can still do made by non-examining physicians based on their review of the evidence in the record. *See* 20 C.F.R. § 404.1513(c).

> The competing first-hand medical evidence exception to avoiding the detailed anal-
> ysis of the six § 1527(c)(2) factors does not contemplate using other evidence from
> the same physician.  To the contrary, use of such evidence is fully anticipated within
> two of the six required factors – support for the physician's opinions in the medical
> evidence of record and consistency of the opinions with the record as a whole.

*Id.*  Inconsistencies within a treating physician's own opinions do not justify bypassing the detailed

analysis of the six factors.

The Magistrate Judge also points out inconsistencies between the opinions of Dr. McClaran

and Drs. Nieto and Sardar.  But the ALJ did not find as a factual matter that the opinions of either

of these doctors are more well-founded than those from Dr. McClaran.  In fact, the ALJ specifically

rejected the opinions of Dr. Nieto.  (*See* Tr. at 25.)  And the ALJ merely set out the opinions and

findings of Dr. Sardar in his medical summary.  (*See* Tr. at 19-20, 23-24.)  At no point did he com-

pare or weigh any opinion of Dr. Sardar against the opinions of Dr. McClaran.[12]  The opinions of

Drs. Nieto and Sardar provide no basis to bypass the detailed analysis required by *Newton* absent a

weighing of the opinions or a factual finding that their opinions are more well-founded based upon

first-hand competing medical evidence.  Neither of those scenarios are present here.

Under the facts of this case, the ALJ was required to provide a detailed analysis of the six

factors.  And the ALJ did not do so.  But even if an ALJ procedurally errs by not more fully consid-

ering and weighing the opinions of a treating physician, reversal and remand is only required when

---

[12]In her objections, Plaintiff argues that the ALJ did not weigh the opinions of Dr. Sardar.  (Obj'ns at 3.)
Partially quoting *Howeth*, Plaintiff further argues that, "[r]egardless, a physician's treatment records 'do not fall within
the competing first-hand medical evidence exception noted in *Newton* even if they may appear inconsistent with [the]
opinions . . ..'"  (Obj'ns at 3 (ellipsis added by Plaintiff, brackets added by the Court).)  Plaintiff misconstrues and
overstates the meaning of the quoted material.  She attempts to broaden the meaning to encompass any treatment records.
But the quoted material clearly and unambiguously relates only to treatment records from the same treating physician.
While it is appropriate to rely on that section of *Howeth* for the proposition that treatment records of Dr. McClaran
himself "do not fall within the competing first-hand medical evidence exception," it is inappropriate to extend the section
to opinions of Dr. Sardar – a different treating physician.

the error affects the substantial rights of the claimant. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (applying harmless error analysis to a different type of ALJ error); *Singleton v. Colvin*, No. 3:12-CV-0821-BF, 2013 WL 1562867, at *12 (N.D. Tex. Apr. 15, 2013) (applying harmless error analysis to similar error). Absent an error that affects the substantial rights of a party, administrative proceedings do not require "procedural perfection." *Taylor*, 706 F.3d at 603. Procedural errors affect the substantial rights of a claimant only when they "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam). For the reasons that follow, the ALJ's consideration and weighing of the opinions of Dr. McClaran has affected the substantial rights of the plaintiff in this action.

The assessment of Plaintiff's RFC is crucial in this case. Many of Dr. McClaran's opinions relate to that RFC. A claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. *Id.* § 404.1546(c). But that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* § 404.1545(a)(3).

Dr. Post is the only agency physician to assess Plaintiff's physical residual functional capacity. She recorded the following exertional limitations: (1) occasionally lift or carry, including upward pulling, twenty pounds; (2) frequently lift or carry, including upward pulling, ten pounds; (3) stand and/or walk for about 6 hours; (4) sit for about six hours without any need to alternate between sitting and standing to relieve pain or discomfort; and (5) unlimited ability to push and/or pull, including operation of hand and/or foot controls, other than limitations shown for lifting and

carrying.  (Tr. at 660.)  In addition, she found that the records did not establish any postural limitations (climbing, balancing, stooping, kneeling, crouching, and crawling) or manipulative limitations (reaching, handling, fingering, and feeling).  (Tr. at 661-62.)

But in reaching her assessment on April 2, 2011, Dr. Post merely reviewed the medical files. And she specifically noted that the file did not include a medical source statement.[13]  (Tr. at 665.) In her additional comments, furthermore, she merely noted medical treatment in April, May, and August 2010.  (Tr. at 666.)  Moreover, even though the form provides space to explain how or why the evidence supports her conclusions as to Plaintiff's exertional limitations, Dr. Post left that space blank.  (*See* Tr. at 660.)  Lastly, it does not appear that Dr. Post reviewed the MIQ that Dr. McClaran completed in September 2010 and she had no access to the MIQ completed January 5, 2012.  While the ALJ also relied upon Dr. Reddy who affirmed Dr. Post's assessment on September 25, 2011, that doctor likewise reviewed only the same medical file as Dr. Post in addition to a newly received April 27, 2011 record from Dr. Sardar.  (*See* Tr. at 739.)  For these reasons, neither Dr. Post nor Dr. Reddy provide any reason to discount the medical opinions of Dr. McClaran.  Because these physicians did not examine Plaintiff, their opinions are entitled to less weight than a treating physician, like Dr. McClaran, who had examined the plaintiff for a period of years.  *See* 20 C.F.R. § 404.1527(c).  Had the ALJ undertaken the detailed analysis required by the regulations, he would have fully considered these matters.

---

[13]Among other things, a medical report should include

> A statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section (except in statutory blindness claims).  Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete.  *See* § 404.1527.

*See* 20 C.F.R. § 404.1513(b)(6).

On the record before it, the Court cannot say that the failure to conduct the detailed analysis is harmless error.  Had the ALJ conducted that analysis, there is a realistic possibility that he would have given greater weight to the opinions of the treating physician instead of the opinions of the non-examining physician.  There is also a realistic possibility that the ALJ may have sought clarification or additional evidence as contemplated by 20 C.F.R. § 404.1520b(c)(1).  And, whether the ALJ accepted the opinions of Dr. McClaran or sought additional evidence, such change would cast into doubt the existence of substantial evidence to support the ALJ's current decision.

The ALJ relied upon the opinions of Dr. Post to conclude that Plaintiff can lift or carry twenty pounds occasionally, ten pounds frequently; stand or walk for at least six hours; sit for about six hours, and is not limited in pushing or pulling.  (Tr. at 25.)  After incorporating those limitations into his hypothetical questioning of the VE, (*see* Tr. at 79-80), the ALJ relied upon the testimony of the VE to find Plaintiff not disabled at Step 5, (Tr. at 30-31).  In response to questioning from counsel, the VE also testified that Plaintiff would be unable to perform the identified jobs if she could not frequently reach, handle, and finger or was unable to sit or stand for six hours.  (Tr. at 81.)  Thus, had the ALJ given greater weight to Dr. McClaran's opinions that Plaintiff was markedly limited in using her arms for reaching and could sit for no more than three hours and stand/walk for no more than two hours, the testimony of the VE would be insufficient to support a finding of non-disability at Step 5.

The Magistrate Judge accurately points out that Dr. McClaran's medical opinions were inconsistent at times and that they could be viewed as at odds with opinions of Dr. Sardar and Dr. Nieto.  And these matters can certainly impact whether the consideration of Dr. McClaran's opinions affect Plaintiff's substantial rights in this action.  But even though Dr. McClaran opined that Plaintiff

20

could not sit for more than 3 hours while at other times he opined that she could sit for more than 5.5 hours, he never opined that Plaintiff could sit for at least 6 hours, as found by the ALJ and incorporated into the questioning to the VE.  The one assessment by Dr. Nieto suffers from the same ambiguity – it merely indicates that Plaintiff can sit for more than 5.5 hours.  (*See* Tr. at 316.)  And the records of Dr. Sardar do not assess Plaintiff's ability to sit.  Section 404.1520b(c) provides a basis to obtain clarifying or additional evidence on this matter if there is insufficient evidence to determine the issue of disability.

And although medical records of Dr. Sardar contain general statements about "5/5" strength in extremities and normal concentration, which may conflict with opinions of Dr. McClaran, it is not clear how such a conflict affects the specific limitations found by Dr. McClaran.  Dr. McClaran opined that Plaintiff has significant limitations related to her fine motor skills.  (Tr. at 326, 769.)  Similarly, he found her moderately limited in using her hands for fine manipulations and for grasping, turning, and twisting objects.  (Tr. at 326-27, 769-70.)  He further found her markedly limited in using her arms for reaching, including overhead.  (Tr. at 327, 770.)  He opined that her impairments preclude pushing, pulling, kneeling, bending, and stooping.  (Tr. at 329.)  Although another MIQ lacks that latter opinion entirely, (*see* Tr. at 772), Dr. McClaran's prior Physical Ability Assessments consistently found Plaintiff limited to performing those activities to 0 to 2.5 hours per day.  (Tr. at 362, 385, 398, 710.)  And three out of four of those prior assessments also limited pushing and pulling to twenty pounds.  (Tr. at 362, 398, 710.)  Additionally, in his three completed medical request forms, Dr. McClaran consistently restricted Plaintiff in the following activities: "No lifting or reaching overhead, prolonged standing, carrying heavy objects, pulling, pushing, [and] cannot use power equipment." (*See* Tr. at 360, 399, 708.)  Dr. Nieto likewise found Plaintiff unable

21

to stoop, reach, push, pull, balance, or lift more than ten pounds.  (Tr. at 315.)  And it reasonably appears that he opined that she was unable to use her right hand for fine manipulation or grasping.  (Tr. at 316.)  The opinions of Dr. Nieto support Dr. McClaran's opinions as to Plaintiff's ability to push and pull.  And they appear to support restrictions related to her right hand.  Neither the records of Dr. Nieto nor those of Dr. Sardar eliminate the doubt as to whether substantial evidence exists to support the ALJ's decision.  Such records do not eliminate the realistic possibility that the ALJ would have reached a different conclusion had he properly conducted the detailed analysis of Dr. McClaran's opinions.

While the ALJ carried the Step 5 burden through testimony from a VE, there are significant concerns as to whether the questioning to the VE included all of Plaintiff's limitations.  To constitute substantial evidence to support a Step 5 finding of no disability, testimony from a VE must include all limitations warranted by the evidence.  *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002); *Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  A failure to include all such limitations casts doubt on the existence of substantial evidence to support the decision to deny benefits.  The ALJ included no limitation as to Plaintiff's ability to push or pull even though Dr. McClaran's opinions generally recognize such a limitation and neither Dr. Sardar nor Dr. Nieto state a conflicting opinion in that respect.

To reject the medical opinions of Dr. McClaran without a contrary opinion from a treating or examining source would require usurping the physicians' role.  *See Newton v. Apfel*, 209 F.3d 448, 453-58 (5th Cir. 2000).  As in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."  *See* 209 F.3d at 458.  Nor is this "a case where the ALJ weighs the treating

22

physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *See id.* The ALJ instead gave more weight to opinions of physicians who merely reviewed part of the medical record.

Under a de novo review of the administrative record, the Court finds that the ALJ improperly considered and weighed the opinions of Plaintiff's treating physician. In several respects, the ALJ lacked reliable medical evidence from an examining or treating physician that contradict Dr. McClaran's specific opinions set out in his MIQs and other medical records. The ALJ failed to perform the detailed analysis required by 20 C.F.R. § 404.1527. Had he conducted that analysis and properly considered and weighed the opinions of Dr. McClaran there a realistic possibility that he would have reached a different conclusion in his decision. Consequently, this procedural error casts doubt on the existence of substantial evidence to support the decision to deny benefits. Therefore, Plaintiff's substantial rights have been affected by the consideration and weight accorded to the opinions of Dr. McClaran by the ALJ. This procedural error is not harmless.

For the foregoing reasons, the ALJ improperly rejected opinions stated by Plaintiff's treating physician, Dr. McClaran. The Court sustains the objection of Plaintiff as it relates to evaluating and weighing those opinions. On remand, the ALJ must properly consider the opinions of Dr. McClaran consistent with this order and the applicable social security regulations and rulings.

**B.  Credibility**

The Magistrate Judge found that the ALJ properly determined Plaintiff's credibility. (FCR at 23-25.) Plaintiff objects to this finding. (Obj'ns at 9-10.) He argues that the ALJ merely summarized standards applicable to his credibility determination rather than articulating his reasons for rejecting her subjective complaints. (*Id.*) While it appears that the ALJ extensively used boilerplate

or template language in his decision, that appearance alone does not justify further consideration of Plaintiff's credibility.  But it also appears that the failure to properly consider the opinions of Plaintiff's treating physician played a significant role in the ALJ's credibility determination.  (*See* Tr. at 26-28 (noting inconsistencies between statements regarding her limitations and ability to work and the medical record).)  On the facts of this case, the Court cannot find substantial evidence to support the ALJ's credibility finding given the failure to properly consider the opinions of Dr. McClaran.  Accordingly, the ALJ shall re-assess Plaintiff's credibility on remand.

IV.     **CONCLUSION**

Having conducted a de novo review and determination as to the issues to which Plaintiff has specifically objected in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court hereby sustains Plaintiff's objection regarding the consideration given to her treating physician as stated herein.  Accordingly, it **GRANTS** the Motion for Summary Judgment (doc. 11) filed by Plaintiff, and **REVERSES** the Commissioner's decision to deny Disability Insurance Benefits to Plaintiff.  For the reasons stated herein, the Court **REMANDS** this action for further proceedings consistent with this order.

**SO ORDERED this 17th day of September, 2015.**

**JORGE A. SOLIS**
**UNITED STATES DISTRICT JUDGE**